AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☒ SUPERSEDING

─── OFFENSE CHARGED ───

See Attachment A.

☐ Petty

☐ Minor

☐ Misde-meanor

☒ Felony

PENALTY: See Attachment A

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION  **FILED**

─── DEFENDANT - U.S ───

SEP 17 2015

► HENRY CERVANTES

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

DISTRICT COURT NUMBER

12-792 YGR

─── DEFENDANT ───

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior
summons was served on above charges ►_____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

_____

**IS IN CUSTODY**

4) ☒ On this charge

5) ☐ On another conviction
} ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

_____

Has detainer ☐ Yes  If "Yes"
been filed?  give date
☐ No  filed _____

DATE OF ► Month/Day/Year
ARREST _____

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ► Month/Day/Year
TO U.S. CUSTODY _____

─── PROCEEDING ───

Name of Complaintant Agency, or Person (& Title, if any)

FBI SPECIAL AGENT RUSS NIMMO

☐ person is awaiting trial in another Federal or State Court,
give name of court

_____

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40. Show District

_____

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:  SHOW
DOCKET NO.
☐ U.S. ATTORNEY ☐ DEFENSE  }

_____

☐ this prosecution relates to a
pending case involving this same
defendant  MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under  }

_____

Name and Office of Person
Furnishing Information on this form  BRIAN J. STRETCH

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)  AUSA Joseph M. Alioto Jr.

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:

☐ SUMMONS ☒ NO PROCESS* ☐ WARRANT  Bail Amount: _____

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

_____

* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____  Before Judge: _____

Comments:

**(1)   HENRY CERVANTES, a/k/a "Happy"**

COUNT 1: 18 U.S.C. § 1962(d) – Racketeering Conspiracy
Maximum term of life imprisonment
Maximum term of 5 years' supervised release
Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
to the defendant; or (c) twice the gross pecuniary loss inflicted on another
Mandatory special assessment of $100

COUNT 2: 18 U.S.C. § 1959(a)(5) – Conspiracy to Commit Murder in Aid of Racketeering
Maximum term of 10 years' imprisonment
Maximum term of 3 years' supervised release
Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
to the defendant; or (c) twice the gross pecuniary loss inflicted on another
Mandatory special assessment of $100

COUNT 3: 18 U.S.C. § 1959(a)(6) – Conspiracy to Commit Assault with a Dangerous Weapon in
Aid of Racketeering
Maximum term of 3 years' imprisonment
Maximum term of 3 years' supervised release
Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
to the defendant; or (c) twice the gross pecuniary loss inflicted on another
Mandatory special assessment of $100

COUNT 4: 18 U.S.C. §§ 924(c)(1)(A) and 2 – Use/Possession of Firearm in Furtherance of Crime
of Violence
Maximum term of life imprisonment
Mandatory minimum term of 5, 7, or 10 years' imprisonment, to be imposed
consecutive to any other term of imprisonment
Maximum term of supervised release of 5 years
Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
to the defendant; or (c) twice the gross pecuniary loss inflicted on another
Mandatory special assessment of $100

COUNT 5: 18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering of Victim-1
Maximum punishment is death
Mandatory minimum term of life imprisonment
Maximum term of supervised release of 5 years
Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
to the defendant; or (c) twice the gross pecuniary loss inflicted on another
Mandatory special assessment of $100

COUNT 6: 18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering of Victim-2
 Maximum punishment is death
 Mandatory minimum term of life imprisonment
 Maximum term of supervised release of 5 years
 Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
 to the defendant; or (c) twice the gross pecuniary loss inflicted on another
 Mandatory special assessment of $100

COUNT 7: 18 U.S.C. § 371 – Conspiracy to Obstruct Justice
 Maximum term of 5 years' imprisonment
 Maximum term of 3 years' supervised release
 Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
 to the defendant; or (c) twice the gross pecuniary loss inflicted on another
 Mandatory special assessment of $100

COUNT 9: 18 U.S.C. §§ 1512(c)(2) and 2 – Obstruction of Justice
 Maximum term of 20 years' imprisonment
 Maximum term of 3 years' supervised release
 Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
 to the defendant; or (c) twice the gross pecuniary loss inflicted on another
 Mandatory special assessment of $100

COUNT 10: 18 U.S.C. §§ 844(h) and 2 – Use of Fire to Commit Felony
 Maximum term of 10 years' imprisonment
 Mandatory minimum term of 10 years' imprisonment, to be imposed consecutive to any
 other term of imprisonment
 Maximum term of supervised release of 3 years
 Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
 to the defendant; or (c) twice the gross pecuniary loss inflicted on another
 Mandatory special assessment of $100

COUNT 21: 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) – Drug Conspiracy
 Minimum term of 10 years' imprisonment; maximum term of life
 Minimum term of supervised release of 5 years; maximum term of life
 Maximum fine of $10,000,000
 Mandatory special assessment of $100

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☒ SUPERSEDING

---- OFFENSE CHARGED ----

See Attachment A.

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  See Attachment A

---- PROCEEDING ----

Name of Complaintant Agency, or Person (& Title, if any)

FBI SPECIAL AGENT RUSS NIMMO

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on this form    BRIAN J. STRETCH

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    AUSA Joseph M. Alioto Jr.

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FILED

---- DEFENDANT - U.S ----

SEP 1 7 2015

▶ ALBERTO LAREZ

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
DISTRICT COURT NUMBER NORTHERN DISTRICT OF CALIFORNIA
OAKLAND
12-792 YGR

---- DEFENDANT ----

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☒ On this charge

5) ☐ On another conviction
6) ☐ Awaiting trial on other charges
   } ☐ Federal ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes   If "Yes"
been filed?  ☐ No     give date
                      filed

DATE OF    Month/Day/Year
ARREST ▶

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED   Month/Day/Year
TO U.S. CUSTODY ▶

☐ This report amends AO 257 previously submitted

---- ADDITIONAL INFORMATION OR COMMENTS ----

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT    Bail Amount:
If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance    * Where defendant previously apprehended on complaint, no new summons or
Defendant Address:                        warrant needed, since Magistrate has scheduled arraignment

Date/Time:                Before Judge:

Comments:

**(2)   ALBERTO LAREZ, a/k/a "Bird"**

COUNT 1:  18 U.S.C. § 1962(d) – Racketeering Conspiracy
      Maximum term of life imprisonment
      Maximum term of 5 years' supervised release
      Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
      to the defendant; or (c) twice the gross pecuniary loss inflicted on another
      Mandatory special assessment of $100

COUNT 2: 18 U.S.C. § 1959(a)(5) – Conspiracy to Commit Murder in Aid of Racketeering
      Maximum term of 10 years' imprisonment
      Maximum term of 3 years' supervised release
      Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
      to the defendant; or (c) twice the gross pecuniary loss inflicted on another
      Mandatory special assessment of $100

COUNT 3: 18 U.S.C. § 1959(a)(6) – Conspiracy to Commit Assault with a Dangerous Weapon in
Aid of Racketeering
      Maximum term of 3 years' imprisonment
      Maximum term of 3 years' supervised release
      Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
      to the defendant; or (c) twice the gross pecuniary loss inflicted on another
      Mandatory special assessment of $100

COUNT 16: 18 U.S.C. § 371 – Conspiracy to Obstruct Justice
      Maximum term of 5 years' imprisonment
      Maximum term of 3 years' supervised release
      Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
      to the defendant; or (c) twice the gross pecuniary loss inflicted on another
      Mandatory special assessment of $100

COUNT 17: 18 U.S.C. §§ 1512(c)(2) and 2 – Obstruction of Justice
      Maximum term of 20 years' imprisonment
      Maximum term of 3 years' supervised release
      Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
      to the defendant; or (c) twice the gross pecuniary loss inflicted on another
      Mandatory special assessment of $100

COUNT 18: 18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering of Victim-5
      Maximum punishment is death
      Mandatory minimum term of life imprisonment
      Maximum term of supervised release of 5 years
      Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
      to the defendant; or (c) twice the gross pecuniary loss inflicted on another
      Mandatory special assessment of $100

COUNT 19: 18 U.S.C. §§ 924(c)(1)(A) and 2 – Use/Possession of Firearm in Furtherance of Crime of Violence

> Maximum term of life imprisonment
> Mandatory minimum term of 5, 7, or 10 years' imprisonment, to be imposed consecutive to any other term of imprisonment
> Maximum term of supervised release of 5 years
> Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another
> Mandatory special assessment of $100

COUNT 20: 18 U.S.C. §§ 924(j)(1) and 2 – Use of a Firearm in Furtherance of Crime of Violence Causing the Death of Victim-5

> Maximum punishment is Death (or maximum of life in the event the Attorney General directs the government not to seek death); $250,000 criminal fine; 3 years supervised release; and a $100 mandatory special assessment

COUNT 21: 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) – Drug Conspiracy

> Minimum term of 10 years' imprisonment; maximum term of life
> Minimum term of supervised release of 5 years; maximum term of life
> Maximum fine of $10,000,000
> Mandatory special assessment of $100

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☒ SUPERSEDING

—— OFFENSE CHARGED ——

See Attachment A.

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: See Attachment A

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FILED

—— DEFENDANT - U.S ——

▶ JAIME CERVANTES

DISTRICT COURT NUMBER

12-792 YGR

SEP 17 2015

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

—— PROCEEDING ——

Name of Complaintant Agency, or Person (& Title, if any)

FBI SPECIAL AGENT RUSS NIMMO

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form    BRIAN J. STRETCH

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    AUSA Joseph M. Alioto Jr.

—— DEFENDANT ——

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☒ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

☐ Federal ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes    If "Yes"
been filed?  ☐ No     give date filed

DATE OF ARREST ▶    Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶    Month/Day/Year

☐ This report amends AO 257 previously submitted

—— ADDITIONAL INFORMATION OR COMMENTS ——

PROCESS:
☐ SUMMONS ☒ NO PROCESS* ☐ WARRANT

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

Bail Amount:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:    Before Judge:

Comments:

**(3)    JAIME CERVANTES, a/k/a "Hennessy"**

COUNT 1:  18 U.S.C. § 1962(d) – Racketeering Conspiracy
  Maximum term of life imprisonment
  Maximum term of 5 years' supervised release
  Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
  to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 2: 18 U.S.C. § 1959(a)(5) – Conspiracy to Commit Murder in Aid of Racketeering
  Maximum term of 10 years' imprisonment
  Maximum term of 3 years' supervised release
  Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
  to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 3: 18 U.S.C. § 1959(a)(6) – Conspiracy to Commit Assault with a Dangerous Weapon in
Aid of Racketeering
  Maximum term of 3 years' imprisonment
  Maximum term of 3 years' supervised release
  Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
  to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 7: 18 U.S.C. § 371 – Conspiracy to Obstruct Justice
  Maximum term of 5 years' imprisonment
  Maximum term of 3 years' supervised release
  Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
  to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 8: 18 U.S.C. §§ 3 and 1959(a)(1) – Accessory After the Fact to Racketeering Murder
  Maximum term of 15 years' imprisonment
  Maximum term of 3 years' supervised release
  Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
  to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 9: 18 U.S.C. §§ 1512(c)(2) and 2 – Obstruction of Justice
  Maximum term of 20 years' imprisonment
  Maximum term of 3 years' supervised release
  Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
  to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 10: 18 U.S.C. §§ 844(h) and 2 – Use of Fire to Commit Felony
  Maximum term of 10 years' imprisonment
  Mandatory minimum term of 10 years' imprisonment, to be imposed consecutive to any
  other term of imprisonment
  Maximum term of supervised release of 3 years
  Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
  to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 11: 18 U.S.C. §§ 1959(a)(3) and 2 – Assault with a Dangerous Weapon in Aid of
Racketeering of Victim-3
  Maximum term of 20 years imprisonment
  Maximum term of supervised release of 3 years
  Maximum fine of the greatest of either:  (a) $250,000; or (b) twice the gross pecuniary
  gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 12: 18 U.S.C. §§ 1959(a)(3) and 2 – Assault with a Dangerous Weapon in Aid of
Racketeering of Victim-4
  Maximum term of 20 years imprisonment
  Maximum term of supervised release of 3 years
  Maximum fine of the greatest of either:  (a) $250,000; or (b) twice the gross pecuniary
  gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 13: 18 U.S.C. § 1951(a) – Conspiracy to Commit Robbery Affecting Interstate Commerce
  Maximum term of 20 years' imprisonment
  Maximum term of 3 years' supervised release
  Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
  to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 14: 18 U.S.C. §§ 1951(a) and 2 – Robbery Affecting Interstate Commerce
  Maximum term of 20 years' imprisonment
  Maximum term of 3 years' supervised release
  Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
  to the defendant; or (c) twice the gross pecuniary loss inflicted on another
  Mandatory special assessment of $100

COUNT 15: 18 U.S.C. §§ 924(c) and 2 – Possession of a Firearm in Furtherance of a Crime of
Violence
  Maximum term of life imprisonment
  Mandatory minimum term of 5, 7, or 10 years' imprisonment, to be imposed
  consecutive to any other term of imprisonment
  Maximum term of supervised release of 5 years

Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain to the defendant; or (c) twice the gross pecuniary loss inflicted on another

Mandatory special assessment of $100

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☒ SUPERSEDING

— OFFENSE CHARGED —

See Attachment A.

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See Attachment A

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION   FILED

— DEFENDANT - U.S —

SEP 1 7 2015

▶ ANDREW F. CERVANTES

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

DISTRICT COURT NUMBER

12-792 YGR

— PROCEEDING —

Name of Complaintant Agency, or Person (& Title, if any)

FBI SPECIAL AGENT RUSS NIMMO

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this derendant were recorded under

Name and Office of Person
Furnishing Information on this form     BRIAN J. STRETCH

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)     AUSA Joseph M. Alioto Jr.

— DEFENDANT —

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

_____

**IS IN CUSTODY**
4) ☒ On this charge

5) ☐ On another conviction ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

_____

Has detainer ☐ Yes   If "Yes"
been filed?  ☐ No   give date filed _____

DATE OF   Month/Day/Year
ARREST ▶

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED   Month/Day/Year
TO U.S. CUSTODY ▶

_____

☐ This report amends AO 257 previously submitted

— ADDITIONAL INFORMATION OR COMMENTS —

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT   Bail Amount: _____

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

Date/Time: _____   Before Judge: _____

_____

Comments:

**(4)** **ANDREW F. CERVANTES**

COUNT 1:  18 U.S.C. § 1962(d) – Racketeering Conspiracy
Maximum term of life imprisonment
Maximum term of 5 years' supervised release
Maximum fine of the greatest of either: (a) $250,000; (b) twice the gross pecuniary gain
to the defendant; or (c) twice the gross pecuniary loss inflicted on another
Mandatory special assessment of $100

COUNT 21: 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) – Drug Conspiracy
Minimum term of 10 years' imprisonment; maximum term of life
Minimum term of supervised release of 5 years; maximum term of life
Maximum fine of $10,000,000
Mandatory special assessment of $100

# United States District Court

FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

VENUE: Oakland

CR 12-00792 YGR

UNITED STATES OF AMERICA,

**V.**

HENRY CERVANTES
a/k/a "Happy"
ALBERTO LAREZ,
a/k/a "Bird,"
JAIME CERVANTES,
a/k/a "Hennessy,"
ANDREW F. CERVANTES,
a/k/a "Mad Dog,"

**FILED**

**SEP 17 2015**

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

### DEFENDANT.

THIRD SUPERSEDING INDICTMENT

18 U.S.C. § 1962(d) – Racketeering Conspiracy; 18 U.S.C. § 1959 – Violent Crime in Aid of Racketeering; 18 U.S.C. § 924(c) – Use/Possession of Firearm in Furtherance of Crime of Violence/Drug Trafficking Crime; 18 U.S.C. § 1951 – Hobbs Act Robbery/Conspiracy; 18 U.S.C. § 1512 – Obstruction of Justice/Witness Tampering; 18 U.S.C. § 844(h) – Use of Fire to Commit Federal Felony; 21 U.S.C. § 846 – Drug Conspiracy; 18 U.S.C. § 371 – Conspiracy; 18, U.S,C, § 924(j) – Use of Firearm in Furtherance of a Crime of Violence Causing Death; 18 U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. § 3 – Accessory After the Fact; 18 U.S.C. § 1963 – RICO Forfeiture

A true bill.

_____
Foreman

Filed in open court this ___17___ day of September 2015

_____
Clerk

Bail, $ no process 9/17/15

1   BRIAN J. STRETCH (CABN163973)
    Acting United States Attorney
2

3

4

5

6

7

8

9   UNITED STATES OF AMERICA,

10          v.

11  (1)   HENRY CERVANTES
          a/k/a "Happy"
12  (2)   ALBERTO LAREZ,
          a/k/a "Bird,"
13  (3)   JAIME CERVANTES,
          a/k/a "Hennessy,"
14  (4)   ANDREW F. CERVANTES,
          a/k/a "Mad Dog,"
15

16          Defendants.

17

18

19                    T H I R D   S U P E R S E D I N G   I N D I C T M E N T

20

21

22  The Grand Jury charges:

23

24  COUNT ONE:                    (18 U.S.C. § 1962(d) – Racketeering Conspiracy)

25

26                              Introductory Allegations

27       1.      *Nuestra Familia* – Spanish for "Our Family" and also known by the letters "*NF*" – is a

28

FILED

SEP 1 7 2015

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

CR 12-00792 YGR

VIOLATIONS: 18 U.S.C. § 1962(d) – Racketeering
Conspiracy; 18 U.S.C. § 1959 – Violent Crime in Aid
of Racketeering; 18 U.S.C. § 924(c) – Use/Possession
of Firearm in Furtherance of Crime of Violence/Drug
Trafficking Crime; 18 U.S.C. § 1951 – Hobbs Act
Robbery/Conspiracy; 18 U.S.C. § 1512 – Obstruction
of Justice/Witness Tampering; 18 U.S.C. § 844(h) –
Use of Fire to Commit Federal Felony; 21 U.S.C. §
846 – Drug Conspiracy; 18 U.S.C. § 371 –
Conspiracy; 18, U.S.C, § 924(j) – Use of Firearm in
Furtherance of a Crime of Violence Causing Death;
18 U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. § 3 –
Accessory After the Fact; 18 U.S.C. § 1963 – RICO
Forfeiture

THIRD SUPERSEDING INDICTMENT

1    prison gang that was formed in the late 1960s in the California State prison system. The rise of *Nuestra*

2    *Familia* is linked to the emergence in the late 1950s of another prison gang called the Mexican Mafia,

3    also known as "*La Eme*." Hispanic inmates in the California State prison system joined together to form

4    what became the Mexican Mafia for protection against other prison gangs as well as to engage in illegal

5    activities for profit. The Mexican Mafia soon became dominated by Mexican and Mexican-American

6    inmates from Southern California, and Hispanic inmates from Northern California perceived that they

7    were marginalized under the dominion of the Mexican Mafia. As a result, Hispanic inmates with roots

8    in Northern California banded together and formed what became *Nuestra Familia* in order to protect

9    themselves and advance their own interests.

10        2.      By the 1970s, *Nuestra Familia* rivaled the power of the Mexican Mafia and other prison

11   gangs in California, and the competition between members and associates of *Nuestra Familia* and the

12   Mexican Mafia resulted in violent and often fatal encounters. Similarly, outside of prison, the members

13   and associates of *Nuestra Familia* and the Mexican Mafia competed with each other to control such

14   profitable criminal activities as narcotics trafficking, extortion, and robbery. This competition between

15   the two rivals led to murder, attempted murder, and other acts of violence.

16        3.      *Nuestra Familia* is comprised of relatively few full members, who are known as *carnales*

17   and who control the gang. An individual becomes a *Nuestra Familia* member or *carnal* after being

18   properly schooled, sponsored, and approved by other *Nuestra Familia carnales*. A *carnal* must also

19   prove his loyalty and worth by committing crimes and conducting himself for the gang's benefit. A

20   *carnal* must value the gang above all else and must be willing to sacrifice even family and friends for

21   the gang. According to *Nuestra Familia*'s rules, once one becomes a *carnal*, death is the only way to

22   withdraw from the gang.

23        4.      *Nuestra Familia carnales* control and direct the activities of others, notably members of

24   the various *Norteño* street gangs. *Norteño* gang members pledge their allegiance and loyalty to *Nuestra*

25   *Familia* and are instructed on the rules, rituals, and obligations of *Nuestra Familia*. *Norteño*s commit

26   crimes such as narcotics trafficking, robbery, and murder to benefit themselves and *Nuestra Familia*.

27   Proceeds generated by such illegal activities are expected to be paid as a "tax" to *Nuestra Familia*

28

2

*carnales.* If a *carnal* is incarcerated, the tax is paid into the *carnal's* jail or prison commissary account or to the *carnal's* family. *Nuestra Familia* enforces its rules and promotes discipline among its members and associates by assaulting and threatening those individuals who violate the rules or pose a threat to the organization.

5.     As a response to the prison gang problem in the California prison system, the California Department of Corrections and Rehabilitation ("CDC") initiated its Secure Housing Units ("SHU") programs in its prison facilities. The CDC identified prison gang leaders in a particular facility, removed them from the prison's mainline housing units, and placed them into segregated SHU cells. The goal of the SHU programs was to limit the influence of prison gang leaders by isolating them, thereby restricting their communications and their ability to direct criminal activities of other gang members in and out of CDC custody.

6.     By the early 1980s, the majority of *Nuestra Familia carnales* had been placed in SHU programs, which limited the prison gang's numbers and its influence within the CDC. As a response to the SHU programs, *Nuestra Familia* created a separate gang called *Nuestra Raza* (Spanish for "Our Race"), also known by the letters "NR." *Nuestra Familia* gave *Nuestra Raza* members a set of rules, known as the "14 bonds," that governed their conduct and educated them in carrying out *Nuestra Familia's* orders. Nuestra Raza members eventually became the "foot soldiers" for *Nuestra Familia* and also provided a larger recruiting pool to *Nuestra Familia* by preparing inmates for *Nuestra Familia* membership. Because *Nuestra Raza* was not yet classified as a prison gang, its members were not automatically segregated into SHU programs. Through their *Nuestra Raza* lieutenants, *Nuestra Familia carnales* were able to restore their control within the CDC. By the 1990s, *Nuestra Raza* had grown in size and power and also became known as the "Northern Structure" or "NS."

7.     Despite the efforts of law enforcement officials, *Nuestra Familia* continues to flourish and has expanded its influence over illegal activities outside of the prison system. After *Nuestra Familia* members or associates are released from prison, they remain loyal to *Nuestra Familia* and work to further the goals of *Nuestra Familia* outside of the prison environment. Despite being imprisoned and being closely scrutinized by prison officials, *Nuestra Familia carnales* still manage to convey their

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

orders to *Nuestra Familia* members and associates in and outside of prison through a variety of means, including secret notes, called "kites" or "filters," coded letters, and messages conveyed by complicit visitors. These messages are also sent as legal mail (thereby securing the privacy of its contents), or as a three-way messaging system using post office boxes pursuant to which third parties pick up coded messages and re-deliver them to the intended recipients outside of prison. These types of communications allow incarcerated *Nuestra Familia* members to communicate with and direct other incarcerated members and associates, as well as to communicate with and direct members and associates on the streets.

8.      *Nuestra Familia* organizes its followers on the streets into "regiments," or "crews," which commit crimes for the gang's benefit. A regiment is usually led by a regimental commander who is typically a *carnal* or a high-level *Nuestra Raza* or *Norteño* gang member. Some *carnales* command more than one regiment. The rank and file of a *Nuestra Familia* regiment are called "soldiers" and are usually *Norteño*s. Among other things, the regimental commander is responsible for overseeing the criminal activities of his regiment. The gang member in charge of a regiment collects the regiment's ill-gotten gains and then – after keeping his share – transfers the money to the gang's leadership in prison.

9.      *Nuestra Familia* and its affiliated gangs have been and continue to be engaged in a fierce and violent gang war with the Mexican Mafia and the Mexican Mafia's affiliated gangs, which are generally called "Sureño" or "Southern" gangs. Within the prison system, this rivalry manifests itself in beatings and stabbings, which often result in death. Outside the prison system, the two sides, north and south, fight for control of narcotics trafficking territory as well as control over other crimes. In addition to fighting for control over remunerative illegal activities and using violence and terror for the purpose of enriching themselves, the two sides also engage in violence simply to assert their gang identities.

The Racketeering Enterprise

10.      *Nuestra Familia*, including its leadership, members, associates, and members of its affiliate organizations, including *Nuestra Raza*/Northern Structure and the *Norteño*s, constituted an "enterprise" as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1  continuing unit for a common purpose of achieving the objectives of the enterprise.  The enterprise was

2  engaged in, and its activities affected, interstate and foreign commerce.

3  Purposes of the Enterprise

4      11.    The purposes of the *Nuestra Familia* enterprise included the following:

5          a.    Preserving and protecting the power, territory, reputation, and profits of *Nuestra*

6  *Familia* through the use of intimidation, violence, threats of violence, assaults, and murder;

7          b.    Enriching the members and associates of *Nuestra Familia* through, among other

8  things, the control of and participation in the distribution of controlled substances;

9          c.    Enriching the members and associates of *Nuestra Familia* through, among other

10  things, violence and threats of violence, extortion, assault, and robbery;

11          d.    Keeping victims, potential victims, and witnesses in fear of *Nuestra*

12  *Familia* and in fear of its members and associates through violence and threats of violence;

13          e.    Providing financial support to other *Nuestra Familia* members, including those

14  incarcerated for committing acts of violence, robbery, distribution of controlled substances and other

15  offenses; and

16          f.    Protecting *Nuestra Familia* members and associates who committed crimes by

17  hindering, obstructing, and preventing law enforcement officers from identifying the offenders,

18  apprehending the offenders, and successfully prosecuting and punishing the offenders.

19  The Defendants

20      12.    HENRY CERVANTES, a/k/a "Happy," is a *Nuestra Familia carnal* and has been a

21  member of *Nuestra Familia* since at least in or about 1990.  By in or about 2011, HENRY

22  CERVANTES became the regiment commander for the *Nuestra Familia* in Oakland, California.

23  Among other acts taken in furtherance of *Nuestra Familia*, on or about September 9, 2011, in the

24  vicinity of Coolidge Avenue in Oakland, HENRY CERVANTES killed two individuals, one of whom

25  had dropped out of the *Norteño* criminal organization, by stabbing them both with a kitchen knife.

26  HENRY CERVANTES then enlisted *Norteño* JAIME CERVANTES to destroy the evidence at the

27  murder scene.

28

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

13.     ALBERTO LAREZ, a/k/a "Bird," became a member of *Nuestra Raza* in 1994. By in or about 2011, LAREZ had become a *Nuestra Familia carnal* serving as a regiment commander for the organization. LAREZ distributed controlled substances on behalf of *Nuestra Familia* and sent proceeds from his illegal narcotics trafficking to incarcerated *Nuestra Familia carnales*. Among other acts committed in furtherance of *Nuestra Familia*, on or about August 13, 2012, in San Jose, California, LAREZ murdered a fellow *Norteño* who LAREZ believed was encroaching on LAREZ's "turf."

14.     In addition, throughout 2011, LAREZ groomed a younger *Norteño*, JAIME CERVANTES, a/k/a "Hennessy," to put in "work" (i.e., crimes) on behalf of *Nuestra Familia*. Among other acts committed in furtherance of *Nuestra Familia*, on or about August 27, 2011, in the vicinity of Red Bluff, California, LAREZ and JAIME CERVANTES conspired to commit, and did commit, an armed robbery of a gas station. In addition, on or about September 10, 2011, JAIME CERVANTES set fire to an apartment in Oakland, California, in order to destroy evidence from a double murder committed the previous day by HENRY CERVANTES. Moreover, on or about January 10, 2012, JAIME CERVANTES committed a home invasion robbery in Livermore, California.

15.     ANDREW F. CERVANTES, a/k/a "Mad Dog," was one of two "overseers" within the federal faction of the *Nuestra Familia* from approximately 2011. The two overseers managed *Nuestra Familia* affairs from inside federal prison, and they became the de facto leaders of the organization after the three top generals were rendered "incommunicado" when transferred to the "supermax" ADX federal prison in Florence, Colorado. Once the second overseer was also sent to ADX, ANDREW F. CERVANTES became the sole overseer of the NF. As such, he wielded many of the same powers as the generals of the gang, including the ability to "declare war" against rival gangs. ANDREW F. CERVANTES was the direct supervisor of ALBERTO LAREZ and HENRY CERVANTES. ANDREW F. CERVANTES communicated with them through the use of an elaborate coding system employed by the organization in telephone calls, letters, and "kites."

16.     The defendants – HENRY CERVANTES, LAREZ, JAIME CERVANTES, and ANDREW F. CERVANTES – who are associates, members, and leaders of *Nuestra Familia* and/or *Nuestra Familia's Nuestra Raza*/Northern Structure and/or *Norteño* affiliates, acted individually, with

1 | each other, and also with non-member *Nuestra Familia* associates in the commission of racketeering

2 | activities and other criminal conduct.

3 | <u>The Racketeering Conspiracy</u>

4 |      17.    Beginning on a date unknown to the Grand Jury, but since at least December 2003, and

5 | continuing up through and including the present, in the Northern District of California and elsewhere,

6 | the defendants,

7 | HENRY CERVANTES, a/k/a "Happy,"

8 | ALBERTO LAREZ, a/k/a "Bird,"

9 | JAIME CERVANTES, a/k/a "Hennessy," and

10 | ANDREW F. CERVANTES, a/k/a "Mad Dog,"

11 | together with others known and unknown, each being a person employed by and associated with *Nuestra*

12 | *Familia*, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce,

13 | unlawfully, willfully, and intentionally did combine, conspire, confederate and agree to violate Title 18,

14 | United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the

15 | conduct of the affairs of the *Nuestra Familia* enterprise through a pattern of racketeering activity, as

16 | defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity

17 | consisted of:

18 |      a.    multiple acts and threats involving murder, in violation of California Penal Code

19 | §§ 187, 188, 189, 182, 21a, 664, 653f, and 422;

20 |      b.    multiple acts and threats involving robbery, in violation of California Penal Code

21 | §§ 211, 212, 212.5, 213, 182, 21a, 664, 653f, and 422;

22 |      c.    multiple acts involving dealing in controlled substances, in violation of

23 | 21 U.S.C. §§ 841, 846;

24 |      d.    multiple acts indictable under 18 U.S.C. § 1951 (robbery/extortion affecting

25 | commerce); and

26 |      e.    multiple acts indictable under 18 U.S.C. §§ 1503, 1512; and 1513.

27 |      18.    It was part of the conspiracy that each defendant agreed that a member of the conspiracy

28 |

1    would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

2                                    Means and Methods of the Conspiracy

3          19.      It was part of the means and methods of the conspiracy that the defendants and other

4    members and associates of *Nuestra Familia*, discussed with other members and associates of *Nuestra*

5    *Familia*, among other things:  the membership and rules of *Nuestra Familia*; the status of *Nuestra*

6    *Familia* members and associates who were arrested or incarcerated; the disciplining of *Nuestra Familia*

7    members; encounters between law enforcement and *Nuestra Familia* members and associates; the

8    identities of individuals suspected of cooperating with law enforcement and the proposed actions to be

9    taken against them; plans and agreements regarding the commission of future crimes, including murder,

10   robbery, narcotics distribution, illegal possession of firearms, and assault, as well as ways to conceal

11   these crimes; and the enforcement of the rules of *Nuestra Familia*.

12         20.      It was further part of the means and methods of the conspiracy that the defendants and

13   other members and associates of *Nuestra Familia* purchased, possessed, maintained, used, and circulated

14   a collection of firearms for use in criminal activity by the members and associates of *Nuestra Familia*.

15         21.      It was further part of the means and methods of the conspiracy that the defendants and

16   other members and associates of *Nuestra Familia* committed acts of violence, including murder,

17   attempted murder, and assault, including acts of violence by members and associates of *Nuestra Familia*

18   against rival gang members and others when it suited the enterprise's purposes.  Members of *Nuestra*

19   *Familia* also used violence to impose discipline within the gang.

20         22.      It was further part of the means and methods of the conspiracy that the defendants and

21   other members and associates of *Nuestra Familia* distributed narcotics, committed robbery, extortion,

22   and other crimes, and concealed their criminal activities by obstructing justice, threatening and

23   intimidating witnesses, and other means.

24

25

26

27

28

                                                         8

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1      Notice of Special Sentencing Factors

2   Number 1: Conspiracy to Commit Murder

3        23.     Beginning on a date unknown but since at least December 2003, and continuing up

4   through and including the present, in the Northern District of California and elsewhere, the defendants,

5                       HENRY CERVANTES, a/k/a "Happy"

6                       ALBERTO LAREZ, a/k/a "Bird,"

7                     JAIME CERVANTES, a/k/a "Hennessy," and

8                    ANDREW F. CERVANTES, a/k/a "Mad Dog,"

9   together with others known and unknown to the Grand Jury, each being a person employed by and

10  associated with *Nuestra Familia*, an enterprise engaged in, and the activities of which affected, interstate

11  and foreign commerce, unlawfully, knowingly, and intentionally did combine, conspire, confederate and

12  agree to commit murder, in violation of California Penal Code Sections 187, 188, 189, and 182, to wit,

13  the defendants agreed together and with each other to kill, with malice aforethought, actual and

14  suspected members of rival gangs, individuals suspected of cooperating with law enforcement, and

15  individuals who defied the will of *Nuestra Familia*.

16  Number 2: HENRY CERVANTES murder of Victim-1

17       24.     On or about September 9, 2011, in the Northern District of California, the defendant,

18                       HENRY CERVANTES, a/k/a "Happy,"

19  unlawfully, willfully and intentionally and with deliberation and premeditation, did kill, with malice

20  aforethought Victim-1 in violation of California Penal Code, Sections 187, 188, and 189.

21  Number 3: HENRY CERVANTES murder of Victim-2

22       25.     On or about September 9, 2011, in the Northern District of California, the defendant,

23                       HENRY CERVANTES, a/k/a "Happy,"

24  unlawfully, willfully and intentionally and with deliberation and premeditation, did kill, with malice

25  aforethought Victim-2 in violation of California Penal Code, Sections 187, 188, and 189.

26  Number 4: ALBERTO LAREZ murder of Victim-5

27       26.     On or about August 13, 2012, in the Northern District of California, the defendant,

28

9

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1    ALBERTO LAREZ, a/k/a "Bird,"

2 together with others known and unknown, unlawfully, willfully and intentionally and with deliberation

3 and premeditation, did kill, with malice aforethought, Victim-5, in violation of California Penal Code

4 Sections 187, 188, and 189.

5 Number 5: JAIME CERVANTES attempted murder of Victim-3

6    27.    On or about January 10, 2012, in the Northern District of California, the defendant,

7    JAIME CERVANTES, a/k/a "Hennessy,"

8 unlawfully and knowingly did attempt to kill Victim-3, willfully, deliberately and with premeditation

9 and malice aforethought, in violation of California Penal Code Sections 187, 188, and 189, 21a and 664.

10 Number 6: Conspiracy to Distribute and Possess With Intent To Distribute Controlled Substances

11    28.    Beginning at the latest in or about January 2011 and continuing until at least in or about

12 August 2012, in the Northern District of California, and elsewhere, the defendants,

13    HENRY CERVANTES, a/k/a "Happy,"

14    ALBERTO LAREZ, a/k/a "Bird," and

15    ANDREW F. CERVANTES, a/k/a "Mad Dog,"

16 knowingly and intentionally combined, conspired, confederated and agreed together and with each

17 other, and with other persons known and unknown to the grand jury to knowingly and intentionally

18 distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing

19 a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title

20 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

21    All in violation of Title 18, United States Code, Section 1962(d).

22 COUNT TWO:    (18 U.S.C. § 1959(a)(5) – Conspiracy to Commit Murder in Aid of

23    Racketeering)

24    29.    Paragraphs 1 through 16 and 19 through 22 of this Indictment are realleged and

25 incorporated by reference as though fully set forth herein.

26    30.    At all times relevant to this Indictment, *Nuestra Familia*, including its *Nuestra*

27 *Raza*/Northern Structure and *Norteño* affiliates, constituted an enterprise as defined in Title 18, United

28

10

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1  States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in,

2  and the activities of which affected, interstate and foreign commerce. The enterprise constituted an

3  ongoing organization whose members functioned as a continuing unit for a common purpose of

4  achieving the objectives of the enterprise.

5       31.    At all times relevant to this Indictment, *Nuestra Familia*, the above-described enterprise,

6  through its members and associates, engaged in racketeering activity, as defined in Title 18, United

7  States Code, Sections 1959(b)(1) and 1961(1), namely, multiple acts and threats involving murder, in

8  violation of California Penal Code §§ 187, 188, 189, 182, 21a, 664, 653f, and 422; multiple acts and

9  threats involving robbery, in violation of California Penal Code §§ 211, 212, 212.5, 213, 182, 21a, and

10  664; multiple acts involving dealing in a controlled substance, in violation of 21 U.S.C. §§ 841, 846; and

11  multiple acts indictable under 18 U.S.C. §§ 1951, 1503, 1512, and 1513.

12       32.    Beginning on a date unknown to the Grand Jury, but since at least December 2003, and

13  continuing up through and including the present, in the Northern District of California and elsewhere,

14  for the purpose of gaining entrance to and maintaining and increasing position in *Nuestra Familia*, an

15  enterprise engaged in racketeering activity, the defendants,

16                         HENRY CERVANTES, a/k/a "Happy,"

17                         ALBERTO LAREZ, a/k/a "Bird," and

18                         JAIME CERVANTES, a/k/a "Hennessy,"

19  together with others known and unknown, unlawfully, willfully, and intentionally did combine,

20  conspire, confederate, and agree together and with each other to commit murder, in violation of

21  California Penal Code Sections 187, 188, and 189, to wit, HENRY CERVANTES, LAREZ, and JAIME

22  CERVANTES agreed together and with each other to kill actual and suspected members of rival gangs,

23  individuals suspected of cooperating with law enforcement, individuals who defied the will of *Nuestra*

24  *Familia*, and others in order to maintain and increase their standing within the racketeering enterprise

25  known as the *Nuestra Familia*.

26       All in violation of Title 18, United States Code, Section 1959(a)(5).

27  <u>COUNT THREE:</u>         (18 U.S.C. § 1959(a)(6) – Conspiracy to Commit Assault with a

28

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1    Dangerous Weapon in Aid of Racketeering)

2    33.    Paragraphs 1 through 16, 19 through 22, and 30 through 31 of this Indictment are

3    realleged and incorporated by reference as though fully set forth herein.

4    34.    Beginning on a date unknown to the Grand Jury, but since at least December 2003, and

5    continuing up through and including the present, in the Northern District of California and elsewhere,

6    for the purpose of gaining entrance to and maintaining and increasing position in *Nuestra Familia*, an

7    enterprise engaged in racketeering activity, the defendants,

8    HENRY CERVANTES, a/k/a "Happy,"

9    ALBERTO LAREZ, a/k/a "Bird," and

10    JAIME CERVANTES, a/k/a "Hennessy,"

11    together with others known and unknown, unlawfully, willfully, and intentionally did combine,

12    conspire, confederate, and agree together and with each other to commit assault with a dangerous

13    weapon, in violation of California Penal Code Section 245(a)(1), to wit, HENRY CERVANTES,

14    LAREZ, and JAIME CERVANTES agreed together and with each other to assault with guns, knives,

15    and other dangerous weapons actual and suspected members of rival gangs, individuals suspected of

16    cooperating with law enforcement, individuals who defied the will of *Nuestra Familia*, and others in

17    order to maintain and increase their standing within the racketeering enterprise known as *Nuestra*

18    *Familia*.

19    All in violation of Title 18, United States Code, Section 1959(a)(6).

20    COUNT FOUR:    (18 U.S.C. §§ 924(c)(1)(A) and 2 – Use/Possession of Firearm in

21    Furtherance of Crime of Violence)

22    35.    Beginning on a date unknown to the Grand Jury, but since at least December 2003, and

23    continuing up through and including the present, in the Northern District of California and elsewhere,

24    the defendant,

25    HENRY CERVANTES, a/k/a "Happy,"

26    together with others known and unknown, unlawfully and knowingly did use and carry a firearm during

27    and in relation to a crime of violence for which they may be prosecuted in a court of the United States,

28

12

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1   namely, the *Nuestra Familia* racketeering conspiracy charged in Count One of this Indictment, the

2   conspiracy to commit murder in aid of racketeering charged in Count Two of this Indictment, and the

3   conspiracy to commit assault with a dangerous weapon in aid of racketeering charged in Count Three of

4   this Indictment, and did possess a firearm in furtherance of the offenses charged in Count One, Count

5   Two, and Count Three of this Indictment, and did brandish a firearm in furtherance of the offenses

6   charged in Count One, Count Two, and Count Three of this Indictment, and did discharge a firearm in

7   furtherance of the offenses charged in Count One, Count Two, and Count Three of this Indictment, to

8   wit, HENRY CERVANTES possessed and used, aided and abetted another's possession and use, and

9   had available for their use, a variety of firearms to further the goals and activities of *Nuestra Familia*.

10              All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

11   COUNT FIVE:                    (18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering of

12                                  Victim-1)

13       36.     Paragraphs 1 through 16, 19 through 22, and 30 through 31 of this Indictment are

14   realleged and incorporated by reference as though fully set forth herein.

15       37.     On or about September 9, 2011, in the Northern District of California, for the

16   purpose of gaining entrance to, and maintaining and increasing position in, *Nuestra Familia*, an

17   enterprise engaged in racketeering activity, the defendant,

18                              HENRY CERVANTES, a/k/a "Happy,"

19   together with others known and unknown, unlawfully, willfully, and intentionally did murder Victim-1,

20   in violation of California Penal Code, Sections 187, 188, 189, 21a, and 664.

21              All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

22   COUNT SIX:                     (18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering of

23                                  Victim-2)

24       38.     Paragraphs 1 through 16, 19 through 22, and 30 through 31 of this Indictment are

25   realleged and incorporated by reference as though fully set forth herein.

26       39.     On or about September 9, 2011, in the Northern District of California, for the

27   purpose of gaining entrance to, and maintaining and increasing position in, *Nuestra Familia*, an

28

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1   enterprise engaged in racketeering activity, the defendant,

2                              HENRY CERVANTES, a/k/a "Happy,"

3   together with others known and unknown, unlawfully, willfully, and intentionally did murder Victim-2,

4   in violation of California Penal Code, Sections 187, 188, 189, 21a, and 664.

5          All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

6   <u>COUNT SEVEN:</u>              (18 U.S.C. § 371 – Conspiracy to Obstruct Justice)

7          40.    From at least on or about September 9, 2011, up through and including on or about

8   September 11, 2011, in the Northern District of California, the defendants,

9                              HENRY CERVANTES, a/k/a "Happy," and

10                             JAIME CERVANTES, a/k/a "Hennessy,"

11  and others known and unknown, unlawfully, willfully, and intentionally did combine, conspire,

12  confederate, and agree together and with each other to commit an offense against the United States, to

13  wit, to violate Title 18, United States Code, Section 1512(c)(2).

14  It was a part and an object of the conspiracy that the defendants,

15                             HENRY CERVANTES, a/k/a "Happy," and

16                             JAIME CERVANTES, a/k/a "Hennessy,"

17  and their co-conspirators, unlawfully, willfully, and intentionally would and did corruptly obstruct,

18  influence, and impede an official proceeding, in violation of Title 18, United States Code, Section

19  1512(c)(2).

20                                    Overt Acts

21         41.    In furtherance of the conspiracy and to effect the illegal object thereof, the following

22  overt acts, among others, were committed in the Northern District of California:

23                 a.     On or about September 10, 2011, HENRY CERVANTES told JAIME

24  CERVANTES to destroy evidence at the scene of a double murder in Oakland, California.

25                 b.     On or about September 10, 2011, JAIME CERVANTES traveled to Oakland,

26  California.

27                 c.     On or about September 10, 2011, JAIME CERVANTES set fire to an apartment

28
                                              14
    THIRD SUPERSEDING INDICTMENT
    CR 12-0792-YGR

1  in Oakland, California.

2       All in violation of Title 18, United States Code, Section 371.

3  <u>COUNT EIGHT:</u>     (18 U.S.C. §§ 3 and 1959(a)(1) – Accessory After the Fact to

4       Racketeering Murder)

5       42.    From at least on or about September 9, 2011, up through and including on or about

6  September 11, 2011, in the Northern District of California and elsewhere, the defendant,

7       JAIME CERVANTES, a/k/a "Hennessy,"

8  and others known and unknown, knowing that an offense against the United States had been committed,

9  to wit, a double murder committed by HENRY CERVANTES, on or about September 9, 2011, in

10  violation of Title 18, United States Code, Section 1959(a)(1), unlawfully and knowingly did receive,

11  comfort, and assist the offender in order to hinder and prevent the offender's apprehension, trial, and

12  punishment, to wit, JAIME CERVANTES destroyed evidence relating to a double murder committed on

13  September 9, 2011, in Oakland, California.

14       All in violation of Title 18, United States Code, Section 3.

15  <u>COUNT NINE:</u>     (18 U.S.C. §§ 1512(c)(2) and 2 – Obstruction of Justice)

16       43.    From at least on or about September 9, 2011, up through and including on or about

17  September 11, 2012, in the Northern District of California, the defendants,

18       HENRY CERVANTES, a/k/a "Happy," and

19       JAIME CERVANTES, a/k/a "Hennessy,"

20  and others known and unknown, unlawfully and knowingly did corruptly obstruct, influence, and

21  impede an official proceeding, to wit, HENRY CERVANTES and JAIME CERVANTES destroyed

22  evidence relating to a double murder committed on September 9, 2011 in Oakland, California.

23       All in violation of Tile 18, United States Code, Sections 1512(c)(2) and 2.

24  <u>COUNT TEN:</u>     (18 U.S.C. §§ 844(h) and 2 – Use of Fire to Commit Felony)

25       44.    On or about September 10, 2011, in the Northern District of California, the

26  defendants,

27       HENRY CERVANTES, a/k/a "Happy," and

28

15

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

JAIME CERVANTES, a/k/a "Hennessy,"

unlawfully and knowingly did use fire to commit a felony which may be prosecuted in a court of the United States, to wit, HENRY CERVANTES and JAIME CERVANTES set fire to an apartment in Oakland, California, in order to commit the crimes of conspiring to obstruct justice charged in Count Seven of this Indictment, being an accessory after the fact to racketeering murder charged in Count Eight of this Indictment and obstructing of justice charged in Count Nine of this Indictment.

All in violation of Title 18, United States Code, Sections 844(h)(1) and 2.

<u>COUNT ELEVEN</u>:          (18 U.S.C. §§ 1959(a)(3) and 2 – Assault with a Dangerous Weapon in
                            Aid of Racketeering of Victim-3)

45.    Paragraphs 1 through 16, 19 through 22, and 30 through 31 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

46.    On or about January 10, 2012, in the Northern District of California, for the purpose of gaining entrance to, and maintaining and increasing position in, *Nuestra Familia*, an enterprise engaged in racketeering activity, the defendant,

JAIME CERVANTES, a/k/a "Hennessy,"

together with others known and unknown, unlawfully and knowingly did assault Victim-3 with a dangerous weapon, in violation of California Penal Code, Section 245(a)(1).

All in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

<u>COUNT TWELVE</u>:          (18 U.S.C. §§ 1959(a)(3) and 2 – Assault with a Dangerous Weapon in
                            Aid of Racketeering of Victim-4)

47.    Paragraphs 1 through 16, 19 through 22, and 30 through 31 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

48.    On or about January 10, 2012, in the Northern District of California, for the purpose of gaining entrance to, and maintaining and increasing position in, *Nuestra Familia*, an enterprise engaged in racketeering activity, the defendant,

JAIME CERVANTES, a/k/a "Hennessy,"

together with others known and unknown, unlawfully and knowingly did assault Victim-4 with a

16

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1  dangerous weapon, in violation of California Penal Code, Section 245(a)(1).

2       All in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

3  COUNT THIRTEEN:     (18 U.S.C. § 1951(a) – Conspiracy to Commit Robbery Affecting

4       Interstate Commerce)

5      49.    In or about January 2012, in the Northern District of California, the defendant,

6       JAIME CERVANTES, a/k/a "Hennessy,"

7  and others known and unknown, unlawfully, willfully, and intentionally did combine, conspire,

8  confederate, and agree together and with each other to commit robbery, as that term is defined in Title

9  18, United States Code, Section 1951(b)(1), and thereby would obstruct, delay, and affect commerce and

10  the movement of articles and commodities in commerce.

11       All in violation of Title 18, United States Code, Section 1951(a).

12  COUNT FOURTEEN:     (18 U.S.C. §§ 1951(a) and 2 – Robbery Affecting Interstate Commerce)

13      50.    On or about January 10, 2012, in the Northern District of California, the defendant,

14       JAIME CERVANTES, a/k/a "Hennessy,"

15  and others known and unknown, unlawfully and knowingly did obstruct, delay, and affect commerce

16  and the movement of articles and commodities in commerce by robbery, as that term is defined in Title

17  18, United States Code, Section 1951(b)(1).

18       All in violation of Title 18, United States Code, Sections 1951(a) and 2.

19  COUNT FIFTEEN:     (18 U.S.C. §§ 924(c) and 2 – Possession of a Firearm in Furtherance of a

20       Crime of Violence)

21      51.    On or about January 10, 2012, in the Northern District of California, the defendant,

22       JAIME CERVANTES, a/k/a "Hennessy,"

23  and others known and unknown, unlawfully and knowingly did use and carry a firearm during and in

24  relation to a crime of violence for which they may be prosecuted in a court of the United States, namely,

25  the assault with a dangerous weapon of Victim-3 in aid of racketeering charged in Count Eleven of this

26  Indictment, the assault with a dangerous weapon of Victim-4 in aid of racketeering charged in Count

27  Twelve of this Indictment, the conspiracy to commit robbery affecting commerce charged in Count

28

17

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1   Thirteen of this Indictment, and the robbery affecting commerce charged in Count Fourteen of this

2   Indictment, and did possess and brandish a firearm in furtherance of the offenses charged in Counts

3   Eleven, Twelve, Thirteen, and Fourteen of this Indictment.

4          All in violation of Title 18, United States Code, Sections 924(c) and 2.

5   COUNT SIXTEEN:          (18 U.S.C. § 371 – Conspiracy to Obstruct Justice)

6          52.    In or about October 2011, in the Northern District of California, the defendant,

7                         ALBERTO LAREZ, a/k/a "Bird,"

8   and others known and unknown, unlawfully, willfully, and intentionally did combine, conspire,

9   confederate, and agree together and with each other to commit an offense against the United States, to

10  wit, to violate Title 18, United States Code, Section 1512(c)(2).  It was a part and an object of the

11  conspiracy that the defendant,

12                         ALBERTO LAREZ, a/k/a "Bird,"

13  and their co-conspirators, unlawfully, willfully, and intentionally would and did corruptly obstruct,

14  influence, and impede an official proceeding, in violation of Title 18, United States Code, Section

15  1512(c)(2).

16                              Overt Acts

17         53.    In furtherance of the conspiracy and to effect the illegal object thereof, the following

18  overt acts, among others, were committed in the Northern District of California:

19                  a.     In or about October 2011, in Oakland, California, LAREZ instructed a co-

20  conspirator to discard firearms stored in a residence in Oakland.

21                  b.     In or about October 2011, in Oakland, California, a co-conspirator removed

22  firearms from a residence in Oakland.

23         All in violation of Title 18, United States Code, Section 371.

24  COUNT SEVENTEEN:        (18 U.S.C. §§ 1512(c)(2) and 2 – Obstruction of Justice)

25         54.    In or about October 2011, in the Northern District of California, the defendant,

26                         ALBERTO LAREZ, a/k/a "Bird,"

27  and others known and unknown, unlawfully and knowingly did corruptly obstruct, influence, and

28

18

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1  impede an official proceeding, to wit, LAREZ and a co-conspirator discarded firearms stored at a

2  residence in Oakland, California, thereby obstructing and impeding a federal criminal investigation.

3          All in violation of Tile 18, United States Code, Sections 1512(c)(2) and 2.

4  COUNT EIGHTEEN:        (18 U.S.C. §§ 1959(a)(1) and 2 – Murder in Aid of Racketeering of

5          Victim-5)

6      55.    Paragraphs 1 through 16, 19 through 22, and 30 through 31 of this Indictment are

7  realleged and incorporated by reference as though fully set forth herein.

8      56.    On or about August 13, 2012, in the Northern District of California, for the purpose of

9  gaining entrance to, and maintaining and increasing position in *Nuestra Familia*, an enterprise engaged

10  in racketeering activity, the defendant,

11          ALBERTO LAREZ, a/k/a "Bird,"

12  together with others known and unknown, unlawfully, willfully, and intentionally did murder Victim-5,

13  in violation of California Penal Code, Sections 187, 188, 189, and 21a.

14          All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

15  COUNT NINTEEN:        (18 U.S.C. §§ 924(c)(1)(A) and 2 – Use/Possession of Firearm in

16          Furtherance of Crime of Violence)

17      57.    On or about August 13, 2012, in the Northern District of California, the defendant,

18          ALBERTO LAREZ, a/k/a "Bird,"

19  together with others known and unknown, unlawfully and knowingly did use and carry a firearm during

20  and in relation to a crime of violence for which he may be prosecuted in a court of the United States,

21  namely, the murder in aid of racketeering of Victim-5 charged in Count Eighteen of this Indictment, and

22  did possess, brandish, and discharge a firearm in furtherance of the offense charged in Count Twenty of

23  this Indictment.

24          All in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

25  COUNT TWENTY:        (18 U.S.C. §§ 924(j)(1) and 2 – Use of a Firearm in Furtherance of

26          Crime of Violence Causing the Death of Victim-5)

27      58.    On or about August 13, 2012, in the Northern District of California, the defendant,

28

19

1  ALBERTO LAREZ, a/k/a "Bird,"

2  together with others known and unknown, unlawfully and knowingly, during and in relation to a crime

3  of violence for which they may be prosecuted in a court of the United States, namely, the murder in aid

4  of racketeering of Victim-5, charged in Count Eighteen of this Indictment; did use and carry a firearm,

5  and in furtherance of such crime, did possess a firearm, and in the course of that crime did cause the

6  death of Victim-5 through the use of a firearm, which killing was murder as defined in Title 18, United

7  States Code, Section 1111, and manslaughter as defined in Title 18, United States Code, Section 1112.

8  All in violation of Title 18, United States Code, Sections 924(j)(1) and 2.

9  COUNT TWENTY-ONE:            (21 U.S.C. §§ 846, 841 and 841(b)(1)(A) – Drug Conspiracy)

10  59.    Beginning at the latest in or about January 2011 and continuing until at least in or about

11  August 2012, in the Northern District of California, and elsewhere, the defendants,

12  HENRY CERVANTES, a/k/a "Happy,"

13  ALBERTO LAREZ, a/k/a "Bird," and

14  ANDREW F. CERVANTES, a/k/a "Mad Dog,"

15  knowingly and intentionally combined, conspired, confederated and agreed together and with each

16  other, and with other persons known and unknown to the grand jury, to commit the following offenses

17  against the United States in violation of Title 21, United States Code, Section 841(a)(1): to knowingly

18  and intentionally distribute and possess with intent to distribute 500 grams or more of a mixture and

19  substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its

20  isomers; to knowingly and intentionally distribute and possess with intent to distribute a mixture or

21  substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts

22  of isomers; and to knowingly and intentionally distribute and possess with intent to distribute a mixture

23  or substance containing a detectable amount of heroin.

24  All in violation of Title 21, United States Code, Sections 846, 841(a)(1), and

25  841(b)(1)(A).

26  //

27  //

28

20

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1   FORFEITURE ALLEGATION:        (18 U.S.C. § 1963 – Proceeds and Property Involved in

2                                            Racketeering)

3        60.      The allegations contained in Count One of this Indictment are hereby realleged and

4   incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code,

5   Section 1963.  Pursuant to Title 18, United States Code, Section 1963, upon conviction of an

6   offense in violation of Title 18, United States Code, Section 1962, the defendants,

7                          HENRY CERVANTES, a/k/a "Happy"

8                          ALBERTO LAREZ, a/k/a "Bird,"

9                      JAIME CERVANTES, a/k/a "Hennessy," and

10                     ANDREW F. CERVANTES, a/k/a "Mad Dog,"

11   shall forfeit to the United States of America:

12             a.      any interest the defendants have acquired and/or maintained in violation of 18

13   U.S.C. § 1962;

14             b.      any interest in, security, of, claim against, and property and contractual

15   right of any kind affording a source of influence over an enterprise which the defendants have

16   established, operated, controlled, conducted, and participated in the conduct of in violation of 18 U.S.C.

17   § 1962;

18             c.      any property constituting, and derived from, any proceeds obtained, directly and

19   indirectly, from racketeering activity in violation of 18 U.S.C. § 1962.

20       61.      Defendants are jointly and severally liable for forfeiture.

21       62.      If any of the property described above, as a result of any act or omission of the

22   defendants:

23             a.      cannot be located upon the exercise of due diligence;

24             b.      has been transferred or sold to, or deposited with, a third party;

25             c.      has been placed beyond the jurisdiction of the court;

26             d.      has been substantially diminished in value;

27             e.      has been commingled with other property which cannot be divided without

28

21

THIRD SUPERSEDING INDICTMENT
CR 12-0792-YGR

1                               difficulty,

2    the United States shall be entitled to forfeiture of substitute property pursuant to Title 18, United States

3    Code, Section 1963(m).

4

5    DATED: September _____17_____, 2015          A TRUE BILL

6

7

8                                          FOREPERSON

9    BRIAN J. STRETCH
     Acting United States Attorney

10

11

12   PHILIP A. GUENTERT
     Deputy Chief, Criminal Division

13

14   (Approved as to form:
15   JOSEPH M. ALIOTO JR.
     Assistant United States Attorney

16   JENNIFER R. SYKES
17   ROBERT S. TULLY
     Trial Attorneys

18

19

20

21

22

23

24

25

26

27

28
                                        22
     THIRD SUPERSEDING INDICTMENT
     CR 12-0792-YGR